THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| PHILIP M. KELLY, as Chapter 7 Bankruptcy Trustee in the Matter of John Loghry and Robyn Loghry, | ) ) ) ) | 7:04CV5017 |
| Plaintiff, | ) ) | |
| vs. | ) ) | **MEMORANDUM AND ORDER** |
| STEVE FRANCISCO and STARSEARCH INTERNATIONAL, LLC, | ) ) ) ) | |
| Defendants. | ) | |

Pending before the court is Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(3), and 12(b)(6), and an alternative motion to transfer this action to the Northern District of Texas pursuant to 28 U.S.C. § 1406(a) (filing 53).

## BACKGROUND

**1. This Lawsuit**

According to the complaint, Philip M. Kelly, the Loghry's bankruptcy trustee, is a resident of Scottsbluff, Nebraska; defendant Steve Francisco is a resident of California; and defendant Starsearch International, LLC, is a Nevada limited liability company with its registered place of business in Carson City, Nevada. (Filing 52, Second Amended Complaint.) The parties' stipulation of undisputed facts for purposes of the pending motions states that John Loghry is a resident of Arapahoe, Nebraska. (Filing 67 ¶ 2.)

The bankruptcy trustee, on behalf of the estate of John and Robyn Loghry, filed this action[1] on July 2, 2004, alleging that Loghry and others developed the concept of selling a line of health care products through a multi-level marketing distribution network under the name of Lexxus International, Inc. Lexxus International, Inc., is a Delaware corporation with its principal place of business in Texas. Natural Health Trends Corp. ("NHT") is the parent company of Lexxus, and Dallas, Texas, is its principal place of business. (Filing 67, Stipulation of Undisputed Facts, at 2.)

In approximately December 2000 when Lexxus was formed, Lexxus entered into an agreement with Loghry promising that Loghry would be a front-line distributor[2] for Lexxus. (Filing 67, at 3.) Loghry was to occupy "position 1015 of the Lexxus distribution network," thereby earning commissions earned by him and from sales of other Lexxus distributors in the "downline of position 1015." (Filing 52 ¶¶ 9-10.)

In March 2001, Terry LaCore, a principal in NHT and the CEO of Lexxus, asked Loghry to contact Steve Francisco to recruit him as a Lexxus distributor. Loghry initiated contact with Francisco in California regarding the Lexxus distributorship in "position 1014," which was one level above Loghry's "1015" position. (Filing 67, at 3 & 7.) In March or April 2001, Lexxus activated the "position 1014" distributorship for 1 Star Search, also known as Starsearch

---

[1]The complaint alleges that John and Robyn Loghry filed for Chapter 7 bankruptcy protection in the U.S. Bankruptcy Court for the District of Nebraska on September 18, 2002, and that the U.S. Bankruptcy Court for the District of Nebraska discharged the Loghrys on December 31, 2002; granted the Loghrys' motion to reopen their Chapter 7 case on June 30, 2005; and reappointed plaintiff Kelly as the Chapter 7 bankruptcy trustee to administer certain assets of the bankruptcy estate, including the legal claims of John Loghry against the defendants. (Filing 52 ¶¶ 5-7.)

[2]The parties agree that Lexxus distributors are independent contractors. (Filing 67, at 2.)

International Trust and, later, Starsearch International, LLC. Francisco was the general manager of Starsearch International Trust.[3] (Filing 67, at 3.)

1 Star Search mailed weekly checks averaging $5,000 to Loghry in Nebraska from May 2001 to June 10, 2002. These payments were based on a percentage of Lexxus revenues received by 1 Star Search from Lexxus. (Filing 67, at 6 & 11.) Lexxus, in and from Texas, terminated Loghry's distributorship on June 10, 2002, after which time Loghry stopped receiving money from Lexxus or 1 Star Search. (Filing 67, at 11.)

During oral argument on the defendants' motions, the plaintiff first maintained that the claims in this case were strictly limited to "position 1014 and . . . the 25% that was supposed to go to Mr. Loghry." However, the plaintiff then admitted that his "essential claim" stems from "one big effort" by Lexxus to "squeeze" the plaintiff out of the Lexxus distribution chain. (Digital Audio Recording of 1/30/06 Hearing, Case No. 7:04CV5017, at 10:26:30-10:27:33.)

**2.  The Texas Lawsuit**

On May 13, 2004—more than a year prior to the lawsuit now pending before this court—Lexxus and NHT brought an action against Loghry in the Northern District of Texas seeking a declaration that Loghry breached his distributorship agreement and that Lexxus was legally justified in terminating Loghry's distributorship agreement. (Filing 1, Complaint, Case No. 3:04CV1039 in the United States District Court for the Northern District of Texas.) Loghry asserted several

---

[3]Starsearch International, LLC, succeeded to the business of Starsearch International Trust, including occupation of "position 1014" in the Lexxus distribution network. (Filing 67, at 5-6.)

counterclaims[4] in the Texas action, alleging that he entered into an agreement with Lexxus whereby he was to be the front-line distributor for Lexxus, receiving commissions earned by him and all upstream commissions from his "downline," and that he would own 14 other positions in the Lexxus sales structure which he could activate or sell for his personal benefit. (Filing 54, Defendant's Third Amended Answer, Counterclaim and Claims Against Additional Parties, Case No. 3:04CV1039 in the United States District Court for the Northern District of Texas ¶ 52.) Loghry also alleged:

> In March 2001, Lexxus, in violation of its distributorship agreement with Loghry, entered into an agreement with Steve Francisco, whereby Francisco became an additional front-line distributor of Lexxus at the same level as Loghry. In addition, it was later revealed that Lexxus and Natural Health Trends placed a volume of international sales, particularly in Russia and India, not in Loghry's down line, but in Francisco's down line, all of which was in material breach of the agreement. Upon information and belief, Francisco is currently receiving in excess of $200,000 in commissions on a weekly basis for his sales and commissions as a front-line distributor.

(Id. ¶ 59.)

---

[4]Loghry's counterclaims in the Texas action include breach of contract against Lexxus and NHT for, among other things, terminating Loghry's distributorship and failing to pay Loghry commissions, as well as failure to convey to Loghry 1,000,000 shares of stock in NHT; fraudulent inducement and statutory fraud against Lexxus, NHT, and others for their false promises of conveying stock to Loghry in exchange for Loghry's recruitment efforts; civil conspiracy against several individuals for inducing Loghry to develop the Lexxus distribution network through false promises of stock, additional distributorship positions, and commissions; and tortious interference with contractual relations for creating evidence that Loghry violated company policy, leading to the termination of his distributorship.

In Loghry's civil conspiracy counterclaim that remains for trial in the Texas lawsuit,[5] Loghry alleges that various individuals "manipulate[ed] the Lexxus distribution network, such as through the movement of distributors and downlines from one position to another and the wrongful placement of new distributors in the uplines of existing distributors," causing damages which include the "loss of commissions that [Loghry] would have received as the frontline distributor of Lexxus." (Id. ¶¶ 97-98.)

The parties in the case now before this court agree that "[t]he damages alleged by the Plaintiff in this Nebraska litigation overlap with and are included in, the damages claimed by the Plaintiff in his Counterclaim in the Texas litigation." (Filing 67, at 16.) The plaintiff also specifically admits that the Texas litigation will "drastically narrow the scope of the Nebraska case[] based upon the factual findings from the Texas litigation." (Filing 71, Pl.'s Post-Hearing Br. on Transfer of Venue, at 2.)

## PENDING MOTIONS

The defendants first move to dismiss this case pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction over the defendants. (Filing 53.) While courts typically consider the question of personal jurisdiction before the issue of venue, "this is not an immutable rule." 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3827, at 260 (1986).

> "[N]either personal jurisdiction nor venue is fundamentally preliminary in the sense that subject-matter jurisdiction is, for both are personal

---

[5]A November 17, 2005, order in the Texas case states that Loghry's counterclaims of fraudulent inducement and civil conspiracy remain for trial. (Filing 71, Memorandum Opinion and Order, Case No. 3:04CV1039 in the United States District Court for the Northern District of Texas.)

privileges of the defendant, rather than absolute strictures on the court, and both may be waived by the parties. Accordingly, when there is a sound prudential justification for doing so, we conclude that a court may reverse the normal order of considering personal jurisdiction and venue."

Id. (quoting Leroy v. Great Western United Corp., 443 U.S. 173, 180 (1979) (citations omitted)).

Because this case can be transferred pursuant to 28 U.S.C. § 1404(a), and because "most courts have found that transfer can be made pursuant to 28 U.S.C. § 1404(a) . . . where personal jurisdiction is missing," I shall, in the interest of judicial efficiency, first consider the defendants' motion to transfer this case to the United States District Court for the Northern District of Texas, Dallas Division. Farr v. Designer Phosphate and Premix Intern., Inc., 804 F. Supp. 1190, 1196 (D. Neb. 1992) (Kopf, J.) (citing 15 Charles Wright, Arthur Miller & Edward Cooper, Federal Practice and Procedure § 3827, at 265-66 (1986) (footnotes omitted)). See also 15 Federal Practice and Procedure § 3844, at 332-33.

In federal court, venue questions are governed either by 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406. Section 1404(a) provides for the transfer of a case where both the original and the requested venue are proper. Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1406, on the other hand, applies where the original venue is improper and provides for either transfer or dismissal of the case. Thus, § 1404(a) involves two districts, either of which is one in which the litigation "might have been brought," while § 1406 is applicable when the first forum is demonstrably improper.

The defendants initially argued that venue is not proper in the District of Nebraska. (Filing 54, Defs.' Br. Supp. Mot. Dismiss or Transfer, at 1, 11, 26-30.)

However, at the conclusion of the hearing on this matter, I asked counsel to submit a written response to this question: "If I were to transfer this [case] only under § 1404(a), would I be in error?" (Digital Audio Recording of 1/30/06 Hearing, Case No. 7:04CV5017, at 10:37:40-49; see also 10:36:31-39 ("Tell me why I shouldn't transfer this under § 1404(a)").) Defendants' counsel responded that the defendants "do not object to such transfer." (Filing 72.)

Because § 1404(a) allows transfer of cases where both the original and the requested venue are proper, and because the defendants have filed a written statement not objecting to a § 1404(a) transfer to the United States District Court for the Northern District of Texas, the defendants have impliedly admitted that venue is proper in both Nebraska and Texas and that this case "might have been brought"[6] in the Northern District of Texas. The plaintiff does not contend otherwise.

Thus, the remaining question is whether the defendants have met their burden[7] of proving that transferring this lawsuit to the United States District Court for the Northern District of Texas pursuant to § 1404(a) would be "[f]or the convenience of parties and witnesses, in the interest of justice." In analyzing § 1404(a) motions to

---

[6]The initial § 1404(a) inquiry must be whether this case "might have been brought" in the Northern District of Texas. Venue in a diversity case is proper in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a).

[7]Federal courts generally give "considerable deference to a plaintiff's choice of forum, and thus the party seeking a transfer under § 1404(a) typically bears the burden of proving that a transfer is warranted." Terra Int'l, Inc. v. Mississippi Chem. Corp., 119 F.3d 688, 695 (8th Cir. 1997).

transfer, federal courts are to balance the convenience of parties, the convenience of witnesses, and the interests of justice. "Courts have not, however, limited a district court's evaluation of a transfer motion to these enumerated factors. Instead, courts have recognized that such determinations require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." Terra Int'l, Inc. v. Mississippi Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997).

The "convenience" factors in this case do not particularly favor either party. The District of Nebraska is convenient for the plaintiff, who lives here, but neither Nebraska nor Texas is convenient for the defendants, who live and/or conduct business in California or Nevada. However, because the plaintiff has admitted that his "essential claim" in this case stems from "one big effort" by Lexxus to "squeeze" Loghry out of the Lexxus distribution chain—which is the focus of the Texas litigation—it seems that the Northern District of Texas would be the location of many relevant witnesses and discovery documents.

Thus, the pivotal § 1404(a) factor in this case is the third—the interest of justice. The "interest-of-justice" factor is "to be considered on its own and [is] an important" factor because "the interest of justice may be decisive in ruling on a transfer motion even though the convenience of the parties and witnesses point in a different direction." 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3854, at 439-40 (1986) (footnotes omitted). One aspect of the "interest-of-justice" factor that is frequently considered is "the desire to avoid multiplicity of litigation from a single transaction." Id. at 441. Supreme Court dictum suggests that this consideration should be given great weight:

> "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent. Moreover, such a situation is conducive to a race of diligence among litigants for a trial in the District Court each prefers."

Id. (quoting Continental Grain Co. v. Barge FBL—585, 364 U.S. 19, 26 (1960)). "Thus frequently cases have been transferred to a forum in which other actions were pending from the same transaction." Id. at 442.

For example, May Dept. Stores Co. v. Wilansky, 900 F. Supp. 1154, 1166 (E.D. Mo. 1995), was a Missouri case where an employer brought suit against one of its former executive employees and against a business competitor alleging breach of the employment contract and tortious interference with the employment contract. The United States District Court for the Eastern District of Missouri granted a § 1404(a) transfer to Pennsylvania, where a declaratory judgment action filed by the former employee and the business competitor involving the same employment contract was pending. The court found that while neither jurisdiction would be more convenient for the parties and witnesses, the interests of justice weighed in favor of transfer because (a) all parties were subject to personal jurisdiction in Pennsylvania, so the action "might have been brought" there as required by § 1404(a); (b) venue was proper in Pennsylvania because the parties were deemed to "reside" there; and (c) litigating "related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoids duplicitous litigation and inconsistent results." Id. (internal citation omitted). See also Keymer v. Management Recruiters Int'l, Inc., 169 F.3d 501, 503 n.2 (8th Cir. 1999) (in cases of concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case as matter of federal comity; when parallel litigation has been initiated in separate courts, first-filed rule gives priority to party who first establishes jurisdiction in order to conserve judicial resources and avoid conflicting rulings).

The parties in the case now before this court agree that "[t]he damages alleged by the Plaintiff in this Nebraska litigation overlap with and are included in, the damages claimed by the Plaintiff in his Counterclaim in the Texas litigation." (Filing

9

67, at 16.) The plaintiff also specifically admits that the Texas litigation will "drastically narrow the scope of the Nebraska case[] based upon the factual findings from the Texas litigation" and that Loghry's "essential claim" is the same as the one being litigated in the Northern District of Texas—that is, Lexxus's "one big effort" to "squeeze" Loghry out of the Lexxus distribution chain. (Filing 71, Pl.'s Post-Hearing Br. on Transfer of Venue, at 2; Digital Audio Recording of 1/30/06 Hearing, Case No. 7:04CV5017, at 10:26:30-10:27:33.) Allowing both of these cases to proceed in separate jurisdictions would create a realistic possibility of inconsistent rulings, double recovery, judicial inefficiency, and "wastefulness of time, energy and money that § 1404(a) was designed to prevent." 15 Federal Practice and Procedure § 3854, at 441.

Accordingly, I shall grant the defendants' motion to transfer this matter to the United States District Court for the Northern District of Texas, Dallas Division, and deny the defendants' remaining motions without prejudice.

IT IS ORDERED:

1.   The defendants' motion to transfer this action (filing 53) to the United States District Court for the Northern District of Texas, Dallas Division, is granted pursuant to 28 U.S.C. § 1404(a);

2.   The defendants' remaining motions (filing 53) are denied without prejudice;

3.   The Clerk of the United States District Court for the District of Nebraska is directed to transfer this action to the United States District Court for the Northern District of Texas, Dallas Division;

4.     The Clerk of the United States District Court for the Northern District of Texas is advised that this Nebraska case appears to be related to a case pending in the Northern District of Texas, to wit: <u>Lexxus International, Inc., et al. v. Loghry</u>, 3:04CV1039, which is assigned to Judge Lindsay;

5.     Upon the transfer of this case, the Clerk of the United States District Court for the District of Nebraska shall close this case for statistical purposes.

February 21, 2006.

                                              BY THE COURT:
                                              s/ *Richard G. Kopf*
                                              United States District Judge