IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

PHILIP M. KELLY, as Chapter 7 §
Bankruptcy Trustee in the matter of §
John Loghry and Robyn Loghry, §
§
     Plaintiff, §
§
v. §    Civil Action No. 3:06-CV- 0554-L
§    (Consolidated with 3:06-CV-0561-L)
STEVE FRANCISCO and §
STARSEARCH INTERNATIONAL, §
LLC, §
§
     Defendants. §

**BRIEF IN SUPPORT OF PHILIP M. KELLY'S RESPONSE TO
DEFENDANTS'JOINT MOTIONSFOR SUMMARY JUDGMENT**

DATED: October 27, 2008

                                **HOWIE LAW FIRM, P.C.**

                                Clinton D. Howie
                                State Bar No. 00796782
                                201 Laurence Dr., PMB 314
                                Heath, Texas 75032
                                Telephone:  (972) 722-9290
                                Telefax:  (972) 722-9290

                                **MILLER KEFFER BULLOCK PEDIGO**

                                K. Lawson Pedigo
                                State Bar No. 15716500
                                Louis W. Bullock
                                  Oklahoma Bar No. 1305
                                8401 N. Central Expressway, Ste. 630
                                Dallas, Texas 75255
                                Telephone:  (214) 696-2050
                                Telefax:  (214) 696-2482

                                **ATTORNEYS FOR PHILIP KELLY**

## TABLE OF CONTENTS

I. SUMMARY OF RESPONSE ........................................................................................ 4

II. SUMMARY JUDGMENT FACTS ............................................................................ 7

III. ARGUMENT AND AUTHORITIES ....................................................................... 9

### Part One:  The Joint Grounds (Issue I.A)

A.   TRUSTEE IS NOT BARRED FROM PURSUING CLAIMS BY DOCTRINE OF
JUDICIAL ESTOPPEL. ............................................................................................. 9
1.   Essential Elements of this Affirmative Defense Wholly Unsupported by any
Evidences.................................................................................................................... 10
2.   Inadvertent Answers Irrelevant to Estate and Addressed in Reopening Process
Allowing Pursuit of these Claims............................................................................. 11

### Part Two:  Francisco/Starsearch Grounds (Issues I.B and I.C)

A.   STRONG EVIDENCE EXISTS THAT LOGHRY WAS DAMAGED BY
CONDUCT OF STARSEARCH AND FRANCISCO – (Issue I.B).................................. 12

B.     FRANCISCO AND STARSEARCH PARTICIPATED IN AND PROFITED BY
CONSPIRACY TO DEFRAUD LOGHRY, STARSEARCH BREACHED CONTRACT
WITH LOGHRY AND FRANCISCO INTENTIONALLY INTERFERRED WITH
STARSEARCH CONTRACT WITH LOGHRY ON POSITION – (Issue I.C)............... 13

### Part Three:   Lexxus/NHT Grounds (Issues I.D, I.E, and I.F)

A.   ALL LEXXUS/NHT GROUNDS ARE PROCEDURALLY PROHIBITED............ 17

B.   LOGHRY DAMAGED BY LEXXUS/NHT BREACHING AGREEMENT ON
UPLINE POSITIONS – (Issue I.D)............................................................................ 17

C.   LOGHRY WAS DAMAGED WHEN UPLINE POSITION DISTRIBUTORS PAID
TO STARSEARCH – (Issue I.E)............................................................................... 18

D.   LOGHRY'S BREACH OF CONTRACT CLAIM ON UPLINEPOSITIONS 1001-
1013 IS TIMELY – (Issue I.F). ................................................................................. 18

CERTIFICATE OF SERVICE..................................................................................... 21

## Statutes

Fed. R. Civ. P. 56(c)……………………………………………………………………...8

Neb. Rev. Stat § 25-206……………………………………………………………..8

Neb. Rev. Stat § 25-207……………………………………………………………...8

## BRIEF IN SUPPORT OF PHILIP M. KELLY'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

TO THE HONORABLE SAM LINDSAY, UNITED STATES DISTRICT JUDGE:

**COMES NOW** Plaintiff, Philip M. Kelly (alternatively, "Kelly"), as Chapter 7 Bankruptcy Trustee in the Matter of John Loghry ("Loghry") and Robyn Loghry, and respectfully submits this Brief ("Brief") in Support of his Response ("Response") to the Joint Motion for Summary Judgment ("Motion") (docket # 119) filed by Defendants Steve Francisco ("Francisco"), Starsearch International, LLC ("Starsearch"), Lexxus International, Inc. ("Lexxus"), and Natural Health Trends Corp.("NHT"), collectively referred to herein as "Defendants," and, in support thereof, would respectfully show the Court as follows:

### I. SUMMARY OF RESPONSE

1.      In the Defendants' Motion (Docket #119) there are four issues portrayed as supporting summary judgment.  The Brief in Support of Joint Motion for Summary Judgment ("Brief") (Docket #120), as well as the Appendix (Docket #121) and the other two associated items filed and relied upon for obtaining the relief requested by the Defendants' Joint Motion, divides the issues into six separate issues  at section I, as grounds I.A – I.F, purportedly supporting summary judgment relief.[1]

2.      In addition to the lack of legal merit for all six issues, there are procedural infirmities with four of these issues, i.e., alleged "judicial estoppel" grounds (Issue I.A) purportedly preventing the Trustee from pursuing these claims, as well as NHT raising again three (3) summary judgment arguments (Issues I.D, I.E, and I.F) attacking the merits and timeliness of the Trustee's breach of contract claims.  Specifically, the judicial estoppel

---

[1] Hereinafter, for convenience and clarity issues these six issues will be referred to and discussed as "Issue I.A"or "I.B," etc., as the case may be.

argument has been raised and rejected by the Court.  The other three grounds asserted solely on behalf of Lexxus/NHT were either raised or available to timely raise and were rejected by the Court and, therefore, should be similarly denied as moot or procedurally impermissible in violation of the local rule prohibiting more than one summary judgment filing.

3.      With regard to the substantive defects in these issues, there is not even a hint of evidence that any discrepancy in the bankruptcy filings by John Loghry concealed any income or assets with value that could have been used to repay the creditors.  At the time of bankruptcy, the Loghry's had no income and meager assets (all of which were exempt), but had well over $150,000 of consumer credit card debt.  Failing to list a) the historical income that he was no longer earning because of his fraudulent firing and breach of his contract (which made any business entity that Loghry  used to report his earnings worthless) or b) the contingency of a recovery for these injuries is a circumstance wholly irrelevant to the administration of the bankruptcy, which circumstance makes the instant case  legally distinguishable from the authority cited in the Defendants' Motion and Brief.  Inadvertence is not concealment; and upon learning of the fraud perpetrated against him, Loghry followed the proper procedures to reopen the bankruptcy and fully pursue these claims.

4.      As to the two Francisco/Starsearch grounds, there is a steady stream of payments from Starsearch to Loghry in the amount of 25% of the Position 1014 commissions.  Loghry contends that these were paid pursuant to an agreement with Starsearch; and when the conspiracy to fraudulently fire him was implemented, Francisco agreed to cause Starsearch to breach its agreement with Loghry and to stop paying the 25% of the Position 1014 commissions to Loghry -- which commissions continued to be paid by Lexxus to Starsearch for several years thereafter. Loghry's status as a Lexxus distributor was legally unrelated to the agreement that he had with

**BRIEF IN SUPPORT OF RESPONSE TO DEFENDANTS JOINT MOTION FOR SUMMARY JUDGMENT Page-5**

Starsearch. There was no legal excuse for these payments to stop, and Starsearch should be held liable to pay these amounts to Loghry. Moreover, Francisco agreed with other co-conspirators, Woodburn and LaCore, to allow Starsearch to be inserted in the Upline Positions 1001-1013 that belonged to Loghry. In return Francisco used Starsearch as the vehicle to pay millions of dollars of kickbacks to these NHT officers - all funded with money that should have been paid to Loghry from these same Upline Positions. As a result, Francisco and Starsearch have both benefited by receiving hundreds of thousands of dollars of revenues from Upline Positions 1001-1013 that would not have been received but for their participation in the conspiracy.

    5.    The Lexxus/NHT summary judgment grounds do not address the claim that Loghry's ownership of Upline Positions 1001-1013 was a property right that was wrongfully taken from him when he was fraudulently fired. But for the wrongful firing, Loghry – rather than Starsearch – would have received the millions of dollars of commissions paid on those Upline Positions from distributor sales made in the network actually and rightfully owned by Loghry. In addition, the breach of agreement with Loghry on the ownership of the Upline Positions 1001-1013 could not have occurred any earlier than the date that he was wrongfully fired and the positions taken from him in violation of the agreement he had to serve as the master distributor of Lexxus. Thus, the four-year statute of limitations began to run no earlier than June 2002. If the Lexxus/NHT argument was correct, then Loghry's oral agreement with Lexxus could have been breached the first day after the agreement was made and the claim *would be time-barred before the legal injury had even occurred.* **The law would thus be introduced to a contract that was incapable of being breached.** The Lexxus/NHT argument seeking to dismiss Loghry's claims related to the breach of contract and the damages that flow from Upline Positions 1001-1013 (again, caused by wrongfully firing Loghry as the Lexxus

master distributor and illegally denying the ownership and control of Upline Positions 1001-1013) is a preposterous position and is the reason they chose not to timely raise this ground in their previously filed and authorized summary judgment motion. The summary judgment grounds advanced by Lexxus/NHT are not properly before the court *and* devoid of merit and, thus, should be denied. There is agreement that Nebraska's four-year statute of limitations governs. Neb. Rev. Stat § 25-206, and Neb. Rev. Stat § 25-207. However, the four-years within which this action has to commence did not begin to run until June 2002 – the month Loghry was wrongfully fired – and not any earlier. If the Lexxus/NHT argument on the statute of limitations grounds was correct, then Loghry's oral agreement with Lexxus could have been breached the first day <u>after</u> the four year agreement was made and the claim *would be time-barred before the legal injury even occurred.* **The law would thus be introduced to a contract that was incapable of being breached.**

## II. SUMMARY JUDGMENT FACTS

a.          In late 2000 and early 2001, Loghry entered into an oral agreement with Lexxus whereby he agreed to serve as its master distributor and in return, would own specific positions in the distribution genealogy. These positions were 1001 to 1015.

b.          In the Spring of 2001, Loghry made an agreement with Starsearch that it could operate Position 1014 so long as 25% of all commissions received from Lexxus were paid to Loghry. Until June of 2002, Starsearch kept the agreement with Loghry.

c.          Unbeknownst to Loghry, in Spring of 2002, Starsearch had agreed to start receiving the Upline Position 1001-1013 commission payments and pay those monies to certain Lexxus distributors as well as make kickback payments to Lexxus officers Woodburn and LaCore, in return for Starsearch keeping approximately 12.5% of the gross commissions on these Upline

Positions that were owned by, and should have been paid to Loghry rather than Starsearch. (See Exhibit. A., App.4-16)

d.       In June of 2002, based on false statements of two Lexxus distributors, Loghry was wrongfully fired and since that date Lexxus has denied him any rights in the Upline Positions 1001-1013 ("Upline Positions") that were activated in the name of Starsearch in violation of Loghry's agreement with Lexxus/NHT that he would own and control those positions.  (See Exhibits F, App. 28-30, Affidavit of Thomas Crowley, and Exhibit G, App.31-32, Declaration of Paul Schneider)

e.       Francisco used the circumstance of Loghry's wrongful termination to cause Starsearch to stop paying Loghry the 25% Position 1014 commissions even though the agreement with Starsearch was required to be honored as long as Starsearch received commissions on Position 1014, which in fact it continued to receive for at least another 38 months.  (See Exhibit A, App.4-16)

f.       Several weeks after Loghry was wrongfully terminated, his 25% of Position 1014 commissions began to be paid by Starsearch to former Defendant Lisa Grossman, who was involved in obtaining both false statements which Lexxus used as a pretext to fire Loghry as its master distributor.  See Exhibit H, App.33-34, IRS Forms 1099, issued for annual payments of Starsearch to "General Communications'" a wholly-owned entity of former Defendant Lisa Grossman.

g.       In September of 2002, Loghry had been without income for several months so he and his wife filed for bankruptcy.   They had no non-exempt assets available to pay any debts. Loghry misread the questions in the financial background and schedules sections asking about

income earned at any time in the last two years and was unaware that potential legal claims were supposed to be listed. His discharge was granted. Defendants' Appendix, Exhibit B.

h.      In the Spring of 2003, Loghry learned of the overall fraud that was perpetrated against him resulting in his termination as a Lexxus distributor. Loghry was now employed again and had the financial ability to commit to pay for the cost of litigation to pursue recovery on his legal injury caused by thee Defendants n these related cases.

i.      Loghry sought to reopen the bankruptcy and followed the procedures and guidance to do so as specified by the Trustee and under the auspices of the Nebraska bankruptcy court.

j.      The bankruptcy court approved retention of counsel to pursue these claims. *See,* Retention Agreement, Defendants' Appendix, Exhibit A.

k.      There was a ruling in the Nebraska bankruptcy court, in which Lexxus/NHT appeared, that allowed the Loghrys' bankruptcy to be reopened and declined to rule that judicial estoppel should block the Trustee's claims against Starsearch and Francisco and these claims had not previously been administered not abandoned. Indeed, the Plaintiff was "reappointed" as the Chapter 7 trustee" and was "directed to take whatever action is appropriate to administer" the claims as assets of the bankruptcy estate.

l.      As of today, approximately another $53,000 of creditor claims are unpaid and there are additional expenses of the estate (income taxes, accountants, etc.,) that have been incurred.

### III. ARGUMENT AND AUTHORITIES

#### Part One:  The Joint Grounds (Issue I.A)

**A.      TRUSTEE IS NOT BARRED FROM PURSUING CLAIMS BY DOCTRINE OF JUDICIAL ESTOPPEL.**

As a threshold matter, the Trustee's ability to bring this entire clam has been unsuccessfully opposed and for the reasons set out in the Trustee's Declaration, Exh. E, App. 23-26, this claim without a limitation as to recovery should be allowed to go forward.

1.    **Essential Elements of this Affirmative Defense Wholly Unsupported by any Evidences.** The cases cited by the Defendants all indicated there was some advantage sought or intentional concealment by the debtor and that was conduct to be punished by limiting a recovery. To make that case in this proceeding, the Defendants cite to several instances of inadvertence by Loghry that had not even the slightest effect on the bankruptcy estate's administration. In each case where a limitation was placed on recovery, if the answers had been completed by the debtor in a different way, there would have been a consequence in the bankruptcy estate's administration. Errors without consequence are not the basis for imposition of judicial estoppel because there is no disrespect to the system that would be rewarded. There are criticisms in the Defendants' Brief for Loghry's failure to list non-operating and inactive corporations, but then the Defendants complain when a sizeable foreign obligation *is* included. This is to give the false appearance there is something nefarious. However, in the several years this litigation has been active, and with all the resources the Defendants have brought to bear on John Loghry as distributor who helped make the company profitable,[2] there has been no hidden income source discovered or additional non-exempt assets available to liquidate the creditor claims unearthed. If Loghry had not agreed to use his money to fund this litigation, in reliance o on the Retention Agreement (Defendants' Appendix, Exhibit A), these creditors would have had no recovery and the tortfeasors who defrauded Loghry would have escaped liability for their wrongful conduct. That is the outcome the Defendants seek. But, no discharged debtor would ever invest his funds or take on a public company that wronged him if he could not be allowed to recover alongside his creditors. The terms of the Retention Agreement in the bankruptcy court were fair relied on and should be respected. See Declaration of Philip Kelly, Exhibit E, (App.

---

[2] In contrast to the long line of executives who have had a series of disasters attempting to return Lexxus to the profitability and success it enjoyed attributable to Loghry as the head of its marketing.

23-26).

**2.      Inadvertent Answers Irrelevant to Estate and Addressed in Reopening Process Allowing Pursuit of these Claims.**   In any event, the fraud and conspiracy claim were not known about *even* by the Defendants' admission.   So, when Loghry was advised of this circumstance in the Spring of 2003, and at a time when he had recovered from the fraudulent firing and had the financial ability to invest in this recovery, the bankruptcy court in Nebraska, with full knowledge of the failure to list this contingent claim in the corresponding bankruptcy schedule, allowed the bankruptcy to be reopened, and the administration of this claim as an asset of the bankruptcy estate to go forward.   Surely if there was any court that would have been concerned about a debtor abusing the process it would have been *that* bankruptcy court.   After hearing the facts, the Court determined that the proper approach was to allow Loghry to use his resources to pursue a recovery and even receive one-third of all monies recovered.   Of course this was entirely equitable since Loghry accepted all of the economic risk of litigation if there was no recovery.   See Defendants' Appendix, Exhibit A.

### Part Two:  Francisco/Starsearch Grounds (Issues I.B and I.C)

**FRANCISCO AND STARSEARCH PARTICIPATED IN AND PROFITED BY CONSPIRACY TO DEFRAUD LOGHRY, STARSEARCH BREACHED CONTRACT WITH LOGHRY AND FRANCISCO INTENTIONALLY INTERFERRED WITH STARSEARCH CONTRACT WITH LOGHRY ON POSITION**

3.      The two grounds for summary judgment, pertaining only Francisco and Starsearch, attack the merits of the Trustee's claims asserting that  damages suffered by Loghry were not caused by the conduct of Francisco and/or Lexxus (Issue I.B), <u>and</u> there is no evidence on the essential elements of the contract and conspiracy claims against them (Issue I.C).   Plaintiff concedes these two substantive grounds have not previously been ruled on by the Court, but, for the reasons set

out below, they do not identify any issue for which summary judgment is supported or appropriate and should these grounds therefore be denied.

### A.  STRONG EVIDENCE EXISTS THAT LOGHRY WAS DAMAGED BY CONDUCT OF STARSEARCH AND FRANCISCO – (Issue I.B)

4.     As referenced in Section I above, Plaintiff's claims *solely* against Starsearch and Francisco relate to the Position 1014 agreement whereby Starsearch was obligated to pay Loghry 25% of commissions from that position.  This agreement was complied with from its inception in the Spring of 2001, until June 2002.  During this period, Loghry received $153,304.05 (based on information the Plaintiff has assembled to date).  See Note 4, Exh. D, (App. 22)  Incredibly, the Motion claims that Plaintiff is seeking to recover these 25% payments *that have been paid*. This claim is totally incorrect.  The Plaintiff's expert report is a financial summary showing "Lost Commission Calculations" and it clearly discloses those sums actually received by Loghry were excluded from the calculations of the commissions Loghry lost as a result of Starsearch not paying him 25% of the Position 1014 after his termination payments through the date of August 2006.  In this regard, Exhibit H, (App.33-36), are Forms 1099 summarizing annual payments to a wholly-owned entity of former Defendant Lisa Grossman – who was awarded Loghry's 25% interest in Position 1014 as her economic incentive for participating in the scheme to fraudulently fire Loghry as a Lexxus distributor.[3]  When these materials are all assembled, they will amply corroborate the amount of the legal injury to which Loghry is entitled to a recovery from Starsearch for breach of contract.  In this regard, Mr. Soward's subsequent report is merely a summary of Position 1014 checks paid and amounts still due to Loghry in the event the finder of fact determines the 25% agreement between Loghry and Starsearch as to Position 1014

---

[3]  Again see, Exhibit F, App. 28-30, Affidavit of Thomas Crowley, detailing Grossman's involvement in the scheme to have Loghry fired as a Lexxus distributor.

commissions was in effect. This summary is based on the financial records Lexxus provided in discovery (See Exhibit A, App. 4-16) which were represented as complete and accurate through August of 2006, when they were produced. Accordingly, if the jury concludes there was an agreement with Starsearch as Loghry contends, then he is due another $867,784.51, for the Position 1014 commissions paid through August 20, 2006. Any additional amounts paid on that position to Starsearch will increase this damage amount (as will attorney's fees). Furthermore, this is the same summary of financial damages that will also form the basis for measuring the legal injury caused by Francisco interfering with Loghry's contract with Starsearch involving these Position 1014 commissions (before election of remedies offsets on considered).

The only "close call" on summary judgment proof would be whether there is genuine issue of material facts as to the *lack of an agreement* requiring Starsearch to pay Loghry 25% of the Position 1014 commissions it received from approximately June 2, 2002, forward. There is no dispute Starsearch paid Loghry 25% of all Position 1014 commission income until his termination as a Lexxus Distributor. However, these funds were paid to Starsearch by Lexxus without any reference to Starsearch serving as an agent of Lexxus, or in connection with any other such distinction or limitation on the Position 1014 checks paid to Starsearch with regard to the Loghry 25% obligation. Also, these monies were reported to the IRS as paid *by Starsearch to Loghry* as the recipient of taxable income from Starsearch. All of these facts are strong proof that prevents Francisco and Starsearch from now claiming no such agreement to pay 25% of the Position 1014 commissions to Loghry existed. See Exhibit. I, App.39-40 (Page 85 line 20, through page 86, line 14)

**B.    FRANCISCO AND STARSEARCH PARTICIPATED IN AND PROFITED BY CONSPIRACY TO DEFRAUD LOGHRY, STARSEARCH BREACHED CONTRACT WITH LOGHRY AND FRANCISCO INTENTIONALLY INTERFERRED WITH STARSEARCH CONTRACT WITH LOGHRY ON**

**POSITION − (Issue I.C.)**.

Both Francisco and Starsearch were key participants in the conspiracy. Starsearch was inserted, by Francisco, as the distributor owning and controlling Upline Positions 1001-1013, once Loghry was fraudulently fired. Francisco then facilitated receiving commissions on these Upline Positions through Starsearch in complete violation of Loghry's rights to the Upline Position commissions − and then directing portions of these monies to other Lexxus distributors as well as pay millions of dollars of kickbacks to former Defendants (and former Lexxus/NHT officers) LaCore and Woodburn using a nominee entity they designated. See Exhibit B, (App. 17-20.) Starsearch benefited by retaining a "piece" of each Upline Positions approximately 2.5% of these monies for serving as the "administrator" of the conspiracy. See Exhibit I, App.45(Page 179 line 19, through page 180, line 12.) Francisco also was involved, again using Starsearch, to cease paying Loghry his 25% of the Position 1014 monies in connection with the wrongful termination, but instead redirecting these funds to former Defendant Lisa Grossman as her compensation for efforts effectuating the fraudulent firing of Loghry. According to the "Settlement Agreement" Francisco individually received specified amounts of these Upline Position commissions belonging to Loghry. (See Exhibit C, App. 21) The claim by Francisco/Starsearch that Loghry "conceded" there was no factual basis for the Plaintiff's claims involving the conspiracy and intentional interference with the contract between Starsearch and Loghry is simply not accurate. As a lay person, Loghry testified that he should have received income out of the Lexxus Positions 1001−1013 that were activated (hereinafter "the Upline Positions") and that these monies "flowed through Steve [Francisco] and Starsearch" but that Starsearch and Francisco received some of these monies. The fact that other people who profited from these positions were the Lexxus/NHT officers and former Defendant Lisa Grossman (as to Position 1014) involved in Loghry's fraudulent firing as a Lexxus distributor and received

monies he would have received but for the wrongful termination, were other facts that Loghry recited as information indicating to him identities of person involved in the misconduct directed at him. See Defendants' Brief at pages 36-37. This is evidence of the economic motive that was the inducement for these parties to engage in the tortious conduct alleged in the pending complaints.

Indeed, Francisco admits that he was to be the "administer" in the division of the proceeds from the Upline Positions used to fund the Kickbacks to NHT's former officers Mark Woodburn and Terry LaCore. See Exhibit I, App. 37-45 (Page 179 line 24, through page 180 line 9), the Form 8-K (Exhibit B, App. 17-20) detailing the financial conspiracy that utilized the Upline Position commissions rightfully owned by Loghry, but which were denied to him in connection with his fraudulent firing in June of 2002.

4.      This scheme also formed the basis of the recent SEC enforcement action against Woodburn and LaCore. Francisco even caused Starsearch to issue the Form 1099s to the nominee entity "Woodridge Development Corporation" so as to assist these funds from being connected to either Woodburn or LaCore. See Exhibit I, App.43 (Page 135 line13, through page 136 line 21) In this regard, Francisco's explanation when questioned about paying these kickbacks was to claim that he thought he was "paying the money back to the company." In other words, to testify that, for example, a payment to NHT officer Terry LaCore, using a check made out to him as an individual, and issuing a Form 1099 to him individually, and mailing it to LaCore's home address (See Exhibit I, App.43 Page 135 line 7, through page 137 line 15), would be the specific financial trail for commissions paid to Starsearch to be paid "back to the company [Lexxus]" is highly mendacious and likely will be found highly offensive by the jury unless he invents a new explanation. Why would Lexxus even pay Starsearch in the first place,

and why would Francisco or Starsearch receive a net benefit of hundreds of thousands of dollars out of the commissions that should have gone to Loghry, if this was not the illegal conspiracy Plaintiff has plead in his complaint.  The standard for summary judgment set out in Rule 56(c) is nowhere near being satisfied by the Motion.

It is hard to imagine a more expansive – or lucrative – role, than the one that Francisco and Starsearch fulfilled in the conspiracy.

### Part Three:   Lexxus/NHT Grounds (Issues I.D, I.E, and I.F)

In the Lexxus/NHT summary judgment filed (before the Consolidation Order, Docket # 103), on November 5, 2007, summary judgment relief was sought on the breach of contract claim to include a contention that it was not timely filed.    This motion has been decided.  See, Order dated February 13, 2008 (Docket # 52).    After the subject ruling, the Plaintiffs' essential the claim that Loghry was wrongfully fired in July of 2002, and lost the value from the Upline Positions 1001–1013, remained.  He was damaged by this breach of contract because Lexxus/NHT refused to recognize his rights to own and control the Upline Positions 1001-1013, for his own benefit.  Consequently, because a second summary judgment is not allowed, the prior summary judgment already attacked the Plaintiff's breach of contract claims – both  in substance and on the basis it was not timely filed, and because there is not merely a fact question, but substantial proof exists that Loghry *was* wrongfully fired and lost ownership of the Upline Positions 1001-1013 (which were given to Defendant Starsearch so that the kickback scheme could be executed – which Loghry would never had participated in), there exists a genuine issue of material fact that Loghry suffered significant damages and thus the Trustee should be allowed to pursue this claim.

**A.    ALL LEXXUS/NHT GROUNDS ARE PROCEDURALLY PROHIBITED**

According to Local Rule 56.2, a party is entitled to one summary judgment.  Not only has Lexxus/NHT filed a summary judgment in this case, it involved the breach of contract claim and whether the statute of limitations barred pursuing this claim.  The Court's ruling provided some relief to Lexxus/NHT but Plaintiff is entitled to pursue the claims that remained alive after the ruling.  That Loghry was wrongfully fired by Lexxus, and this circumstance was used to deny him ownership of the Upline Positions 1001-1013, is the Plaintiff's claim that is being pursued.    In this regard, the summary judgment evidence from Thomas Crowley (Exhibit F, App. 28-30) and Paul Schneider (exhibit G, App. 31-32) is strong proof of the wrongfulness of Loghry's firing as a Lexxus distributor in June of 2002.  It was factually impossible for Loghry to have engaged in "cross-recruiting" on behalf of MVP Network, as this was an entity he never worked according to its President Paul Schneider.

**B.    LOGHRY DAMAGED BY LEXXUS/NHT BREACHING AGREEMENT ON UPLINE POSITIONS – (Issue I.D).**

To the extent that Lexxus/NHT are claiming that commissions paid on Upline Positions 1001-1013 do not include commissions earned by distributors in those downlines, then Plaintiff disagrees with their position and will prove at trial Loghry owned Upline Positions 1001-1013 and any distributors in those downlines were part of Loghry's network because he remains the lawful owner of those positions today notwithstanding the breach of contract by Lexxus/NHT terminating Loghry as a distributor with ownership and control of those Upline Positions. Plaintiff is not seeking damages for underpayments to Loghry from his Position 1015 and will concede that factual issue in return for Lexxus/NHT admitting that their payments on the Upline Positions 1001-1013 to Starsearch should have been paid to Loghry subject to the jury concluding Loghry was wrongfully fired.

**BRIEF IN SUPPORT OF RESPONSE TO DEFENDANTS JOINT MOTION FOR SUMMARY JUDGMENT Page-17**

### C.    LOGHRY WAS DAMAGED WHEN UPLINE POSITION DISTRIBUTORS PAID TO STARSEARCH − (Issue I.E).

If Lexxus/NHT is contending that the commissions on the Upline Positions 1001-1013 paid to Starsearch were permissible and/or properly paid *even if* Loghry was wrongfully fired, then Plaintiff vigorously disputes this contention. On the other hand, Plaintiff has not been able to precisely quantify the specific distributor positions that were wrongfully removed from Position 1015's downlink and does not intend to ask the jury to award a recovery on that position especially in light of the enormous liability faced by Lexxus/NHT for improperly paying the commissions due to Loghry on Upline Positions 1001-1013, that were intentionally and wrongfully paid to Starsearch.

### D.    LOGHRY'S BREACH OF CONTRACT CLAIM ON UPLINEPOSITIONS 1001-1013 IS TIMELY − (Issue I.F).

This summary judgment issue is straight forward to resolve because 1) there is no disagreement involving Nebraska's four-year statute governing breach of contract claims, and 2) the Motion simply confuses the date the oral agreement began with the date of the breach of the agreement − which was well over a year later. It is the wrongful firing of Loghry when the four-year statue began to run and this is why Lexxus/NHT's four-year statute of limitations contention is wildly misguided and should fail. When Loghry began as the Lexxus master distributor he was given Upline Position 1001-1015. These rights were respected and there was no breach of the contract by Lexxus for well over a year. Indeed, Lexxus, by and through former Defendant Terry LaCore, in fact recognized Loghry's ownership of these rights and even participated in Loghry's negotiations with Francisco in connection with reaching the agreement that Starsearch could operate Position 1014 in return for 25% of the commissions received from Lexxus being paid to Loghry. As to the remaining positions 1001-1013, the original agreement with Loghry

was in effect and respected until June of 2002, when Loghry was fired and his rights in these Upline Positions were no longer recognized by Lexxus/NHT. The fatal flaw to the Defendant's claims regarding the timeliness of Plaintiff suing for the breach of contract on the Upline Positions 1001-1013 (as well as the claim against Starsearch for the 25% of the 1014 commissions), is this: Nebraska's four-year statue of limitation does not begin to run *until* there is breach of the contract. Again, there was no breach of the agreement requiring Lexxus to honor Loghry's rights in the Upline Positions until he was fired in June 2002. The Defendants have commenced the four-year statute of limitations as if there was a breach when the contract was formed. That is neither the claim that was plead nor is such a claim being pursued.

## CONCLUSION

Each of the six issues raised in the Joint Motion present seriously flawed arguments and do not identify any basis for granting summary judgment and should therefore be denied. For the foregoing reasons, the Joint Motion for Summary Judgment filed by Defendants Steve Francisco ("Francisco"), Starsearch International, LLC ("Starsearch"), Lexxus International, Inc. ("Lexxus"), and Natural Health Trends Corp. ("NHT"), should be denied in their entirety

Respectfully submitted,

**HOWIE LAW FIRM, P.C.**
Clinton D. Howie
State Bar No. 00796782
201 Laurence Dr., PMB 314
Heath, Texas 75032
Telephone: (972) 722-9290
Telefax: (972) 722-9290

**MILLER KEFFER BULLOCK PEDIGO**

/s/ K. Lawson Pedigo
K. Lawson Pedigo
State Bar No. 15716500
Louis W. Bullock
Oklahoma Bar No. 1305
8401 N. Central Expressway, Ste. 630
Dallas, Texas 75255
Telephone:  (214) 696-2050
Telefax:  (214) 696-2482

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on the 27 day of October 2008, I electronically filed the foregoing Plaintiff Philip M. Kelly's Brief in Response to Defendants' Joint Motion for Summary Judgment using the CM/ECF system which sent notice of such filing to all counsel of record.


/s/ K. Lawson Pedigo