IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **PHILLIP M. KELLY, as Chapter 7 Bankruptcy Trustee in the matter of John Loghry and Robyn Loghry**, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. **3:06-CV-0554-L** (Consolidated with No. 3:06-CV-0561-L) |
| **STEVE FRANCISCO and STARSEARCH INTERNATIONAL, LLC,** | § § § | |
| Defendants. | § § | |

**MEMORANDUM OPINION AND ORDER**

Before the court are: (1) Joint Motion for Summary Judgment of Defendants[] Steve Francisco, Starsearch International, LLC, Lexxus International, Inc.[,] and Natural Health Trends Corp., filed October 6, 2008; and (2) Defendants' Objections to Plaintiff's Evidence in Support of Response to Motion for Summary Judgment, filed November 11, 2008. For the reasons set forth herein, the court **defers** ruling on the motion and objections until additional supplemental briefing and evidence has been received.

**I.    Factual and Procedural Background**

This consolidated case grows out of two cases originally filed by Plaintiff Philip M. Kelly ("Plaintiff" or "Kelly"), Chapter 7 Bankruptcy Trustee in the Matter of John Loghry and Robyn Loghry, in the United States District Court for the District of Nebraska. In the Third Amended Complaint[1] in civil action number 3:06-CV-0554-L, Kelly brought claims against Defendants Steve

---

[1] These cases were also consolidated at one time with civil action number 3:04-CV-1039-L, and the live pleading was docketed in that case. The Third Amended Complaint, which includes the claims against Francisco and Starsearch, is document number 131 in civil action 3:04-CV-1039-L.

**Memorandum Opinion and Order - Page 1**

Francisco ("Francisco") and Starsearch International, LLC ("Starsearch") for breach of contract, tortious interference with a business relationship, and civil conspiracy. Kelly also brought claims against several other Defendants in civil action number 3:06-CV-0561-L. The court dismissed several of those claims on February 13, 2008. The only remaining claim from that case, now consolidated with the instant action, is a breach of contract claim against Defendants Lexxus International, Inc. ("Lexxus") and Natural Health Trends Corp. ("NHTC").[2]

Kelly's claims grow out of John Loghry's role as a distributor of products for Lexxus and NHTC through a multi-level marketing (MLM) distribution network. Loghry's claims against Lexxus and NHTC arise out of their alleged breach of an agreement to allow Loghry to act as a "master distributor" for Lexxus and to award positions 1001-1013 in the Lexxus distribution network to him. Kelly pleads that Lexxus and NHTC breached this agreement by:

> (1) adding a second frontline distributor to the Lexxus network; (2) placing international distributors outside of Loghry's downline; (3) wrongfully terminating Loghry's distributorship; and (4) failing to pay Loghry the commissions to which he was entitled from the sale of Lexxus products by his downline distributors.

Compl., 3:06-CV-0561-L (doc. 52), ¶ 35. Lexxus and NHTC previously moved for summary judgment on this claim only with respect to Kelly's assertion that they breached their agreement with Loghry by adding a second frontline distributor (Francisco) to the Lexxus network. The court granted their motion and found that this part of the claim was barred by the applicable statute of limitations, but the remaining three alleged breaches have not been addressed by the court.

Kelly's claims against Francisco and Starsearch grow out of a different alleged agreement between Loghry and Francisco. Loghry alleges that he agreed to give position 1014 to Francisco

---

[2]The remaining claims against Defendant Lisa Grossman were dismissed by the parties' stipulation on July 23, 2008.

**Memorandum Opinion and Order - Page 2**

in exchange for a split of the gross revenue generated by that position. Third Amend. Compl., 3:04-CV-1039-L (doc. 131), ¶ 12. Francisco began operating the position in April 2001 through the entity Starsearch International Trust and, later, Defendant Starsearch. Loghry received weekly checks from Starsearch until June 14, 2002. Kelly contends that Francisco and Starsearch stopped paying Loghry the revenues from position 1014 at the behest of Lexxus, NHTC, and other individuals. He contends that this was part of a conspiracy to deprive Loghry of benefits promised to him by Lexxus, NHTC, and others by wrongfully terminating his distributorships.

Defendants Lexxus, NHTC, Francisco, and Starsearch have moved jointly for summary judgment on the claims remaining in this consolidated case. They contend that Kelly is judicially estopped from pursuing all of the remaining claims, that there is no evidence supporting the claims of tortious interference and conspiracy against Francisco and Starsearch, that there is no evidence of damages supporting the claims against Francisco and Starsearch, and that the remaining claim against Lexxus and NHTC fails because it is barred by the applicable statute of limitations and there is no evidence of damages caused by the alleged breach.

## II.     Legal Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a

motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving

party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III. Judicial Estoppel

### A. Parties' Contentions

Defendants argue that all of the remaining claims Kelly asserts are barred by the doctrine of judicial estoppel. They note that the debtor, John Loghry, has an agreement with Kelly to recover a third of any recovery, and argue that Plaintiff should be estopped from asserting claims that Loghry did not disclose in his bankruptcy schedules. They contend that Loghry failed to disclose these claims in his bankruptcy schedules, that his deposition testimony shows that he knew of these claims when he filed for bankruptcy, that he misrepresented his income in his bankruptcy filings, that he failed to disclose his interests in certain corporate entities and partnerships, and that his listing of creditors in the bankruptcy court is not credible. Defendants question Loghry's inclusion of a creditor to whom he allegedly owes $720,000. They then argue that the fee agreement with the Trustee seeks to reward his fraud on the bankruptcy court. They point out that Kelly is represented by the same lawyers who represented Loghry in the bankruptcy and accuse Loghry of making "a mockery of the judicial process." Defs.' Brief 33. They contend that Kelly, as trustee, has now secured settlements of Loghry's claims that are in excess of the total creditors' filed claims, and argue that Kelly's claims should be barred to prevent a windfall to Loghry.

In response, Kelly has filed an affidavit and argues that there is no evidence to support Defendants' claim that there was any intentional concealment by Loghry. He contends that without Loghry's agreement to fund the litigation, and subsequently to share in the recovery, the litigation

would not have gone forward and the creditors would not have benefited from the settlement of other claims. He also contends that Loghry did not know about the fraud and conspiracy claims at the time he filed his bankruptcy schedules and points out that the Nebraska bankruptcy court allowed the bankruptcy to be reopened and to allow the administration of these claims to go forward as assets of the bankruptcy estate. Kelly also argues that the court should disregard Lexxus and NHTC's arguments made in the summary judgment motion because they did not seek leave to file a second motion for summary judgment.

In reply, Defendants point out that the bankruptcy court specifically deferred to this court on the issue of whether the claims were barred by judicial estoppel. In its order reopening the bankruptcy case, the court stated:

> The claims against Lexxus International, Inc., and Steve and Susan Francisco, whether of value or not, are assets of the Chapter 7 bankruptcy case which have not yet been administered or abandoned. The issues with regard to judicial estoppel claims in both of the federal district court cases can still be appropriately resolved by the federal district courts with the real party in interest before the court.

Defs.' Reply App. 4. Defendants argue that Plaintiff's reliance on the reopening of the bankruptcy case is irrelevant given that court's clear order reserving this issue for this court.

### B. Second Summary Judgment Motion

Before reaching the substantive arguments made by the parties, the court considers Plaintiff's objection that Lexxus and NHTC filed a second motion for summary judgment without leave of court. As Defendants concede, the motion for summary judgment brought by Lexxus and NHTC does violate Local Rule 56.2(b). They point out, however, that insofar as the judicial estoppel argument goes, Defendants Francisco and Starsearch have also moved on this ground for the first

time. They also argue that if the court grants the motion as to the claims against Francisco and Starsearch, it should also grant the motion as to the claims against Lexxus and NHTC.

The court, in its discretion, may allow a party to file a second summary judgment. In this case, although Plaintiff objects, he also responded substantively to the argument that all the remaining claims are barred by the doctrine of judicial estoppel. Although Lexxus and NHTC did not seek leave to file a second motion, the court determines that because there is no legal prejudice to Plaintiff and because allowing Lexxus and NHTC's motion is an efficient use of judicial resources, it will not elevate form over substance and strike Lexxus and NHTC's arguments. Accordingly, the court will consider the arguments raised in Lexxus and NHTC's second motion for summary judgment.

### C. Legal Standard

Judicial estoppel is a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position. *Brandon v. Interfirst Corp.,* 858 F.2d 266, 268 (5th Cir. 1988). "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee,* 156 U.S. 680, 689 (1895). The doctrine's primary purpose is to protect the integrity of the judicial process by preventing parties from "playing fast and loose with the courts to suit the exigencies of self interest." *Brandon*, 858 F.2d at 268 (internal quotation marks, parentheses, and citations omitted).

There are two general limitations on the doctrine of judicial estoppel: (1) the party is judicially estopped only if its position is clearly inconsistent with the previous one; and (2) the court

must have accepted the previous position. *In re Coastal Plains, Inc.*, 179 F.3d 197, 206 (5th Cir. 1999). Other courts apply a third limitation, that the party to be estopped "acted intentionally, *not* inadvertently." *Id*. at 206 (original emphasis) (citing cases); *see also In re Superior Crewboats, Inc.* 374 F.3d 330, 335 (5th Cir. 2004). In applying this third limitation in bankruptcy cases, "the debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claim or has no motive for their concealment." *Coastal Plains,* 179 F.3d at 210.

### D. Analysis

The court determines that the first element – whether the current position is clearly inconsistent with the previous position – has been met. Loghry filed his bankruptcy schedules with the Nebraska bankruptcy court on September 18, 2002. Schedule F, which includes creditors holding unsecured nonpriority claims, lists twenty-three creditors seeking a total of $915,000. The creditor with the largest claim is the Ten Lee Trust 129004 of Belize, with a claim of $725,000. Loghry stated that his income was zero and did not list any interests in any partnership or corporate entity. He did not include any claims or potential claims in the bankruptcy schedules. There is no evidence that Loghry ever amended or sought to amend the bankruptcy schedules. The claims register from the bankruptcy court lists twenty-one filed claims totaling $173,614.54.

The bankruptcy court subsequently entered a discharge on behalf of Loghry in the bankruptcy case in 2002. The court therefore determines that the second element – whether the court accepted the previous position – is met.

The third element considers whether the nondisclosure was inadvertent. Defendants cite extensively from Loghry's deposition testimony and argue that he knew of the mistakes on the

bankruptcy schedules when filed. Loghry's deposition testimony establishes that he knew that he had income and interests in certain partnerships and corporate entities at the time he filed his bankruptcy schedules. He also testified that he knew of the breaches of his agreements with Defendants as early as June 2002, before the schedules were filed. Defendants also point out that Kelly has already settled claims with other Defendants in an amount greater than the bankruptcy claims filed in Nebraska.

Plaintiff responds that there is no evidence to establish that Loghry acted to obtain an advantage or to intentionally conceal any information, that the omissions in his bankruptcy schedule did not affect the administration of the bankruptcy estate, and that Loghry's willingness to fund the litigation enabled the estate to pursue its claims and reach a settlement with other Defendants. Plaintiff supports his position with his declaration. He also points out that the bankruptcy court reopened the estate and allowed the administration of these claims as part of the bankruptcy estate. Plaintiff's response does not cite any case law in support of his arguments.

First, the court considers whether Loghry's failure to disclose his claims against Defendants was inadvertent. "Mistake or inadvertence is an applicable defense to judicial estoppel if the offending party did not have the relevant correct information at its disposal to begin with." *Engines Southwest, Inc. v. Kohler Co.*, 263 Fed. Appx. 411, 413 (5th Cir. 2008) (citing *New Hampshire v. Maine*, 532 U.S. 742, 753-54 (2001)). Although Plaintiff contends that Loghry's failure to disclose was simply inadvertent and did not affect the administration of the bankruptcy estate, the court finds that his deposition testimony establishes that he knew of the claims by June 2002, at least three months before he filed his bankruptcy schedules. Accordingly, the court determines that Loghry's failure to disclose these claims was not inadvertent.

The claims now before the court, however, are brought by the trustee, not the debtor. The court must therefore determine if the *debtor's* nondisclosure of claims can bar the *trustee's* claims brought, ostensibly, on behalf of the bankruptcy estate and the debtor's creditors. With respect to bankruptcy trustees and debtors, judicial estoppel may be differently applied because it is an equitable doctrine. In a recent case, the Fifth Circuit quoted a case that suggested that a trustee may be able to pursue some claims that the debtor himself would be estopped from pursuing:

> [The debtor's] nondisclosure in bankruptcy harmed his creditors by hiding assets from them. Using this same nondisclosure to wipe out [the debtor's claim against the defendant] would complete the job by denying creditors even the right to seek some share of the recovery. Yet the creditors have not contradicted themselves in court. They were not aware of what [the debtor] has been doing behind their backs. Creditors gypped by [the debtor's] maneuver are hurt a second time by the district judge's decision. Judicial estoppel is an equitable doctrine, and using it to land another blow on the victims of bankruptcy fraud is not an equitable application.

*Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 387-88 (5th Cir. 2008) (quoting *Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006)) (brackets in original).

Other courts, however, have questioned whether a trustee may assert claims that will benefit not only the bankruptcy estate, but also the debtor himself. These cases, while not binding authority, are persuasive, especially as their conclusions are based in part on an unwillingness to provide an unwarranted windfall to a litigant who was not entirely forthcoming.

In *Parker v. Wendy's International, Inc.*, the Eleventh Circuit considered claims brought by a bankruptcy trustee that had not been disclosed by the debtor in the bankruptcy case. 365 F.3d 1268 (11th Cir. 2004). Although that court found that the trustee was not judicially estopped from bringing the claims because he did not make the prior statements, it noted:

> [I]n the unlikely scenario where the trustee would recover more than an amount that would satisfy all creditors and the costs and fees incurred, then, perhaps judicial estoppel could be invoked by the defendant to limit any recovery to only that amount and prevent an undeserved windfall from devolving on the non-disclosing debtor.

*Id.* at 1273 n.4; *see also Stramiello-Yednak v. Perl*, 2006 WL 1158123, *5 n.8 (W.D. Pa. Apr. 28, 2006); *Klein v. Lamont*, 2007 WL 3085972, *3 (C.D. Ill. Oct. 18, 2007); *cf. Foulston Siefkin LLP v. Wells Fargo Bank of Texas N.A.*, 465 F.3d 211, 215 (5th Cir. 2006) (rejecting attempts of trustee of a trust to receive certain reimbursements because "it might allow him, in effect, to receive a windfall . . . ."). In *Moore v. Fred's Stores of Tennessee, Inc.*, 2006 WL 2374768 (M.D. Ga. Aug. 16, 2006), the court barred a bankruptcy trustee from asserting claims undisclosed in the bankruptcy case and for which the trustee had agreed to pay the debtor a portion of the recovery. That court did not hold that the trustee was judicially estopped, but rather that the trustee lacked standing because there was no evidence on the record that the claim exceeded $5,000, the amount the trustee agreed to pay to the debtor. *Id.* at *4.

This court is concerned that Loghry may receive an unwarranted windfall because, under the retainer agreement, he is entitled to a third of any recovery. Although the trustee initially was not judicially estopped from bringing claims on behalf of Loghry's bankruptcy estate, the evidence shows that he has already settled claims for nearly twice the amount of the bankruptcy claims filed in Nebraska. Accordingly, the court is faced with the hypothetical set forth in *Parker*, a trustee who could "recover more than an amount that would satisfy all creditors and the costs and fees incurred . . . ." 365 F.3d at 1273 n.4. Moreover, the retainer agreement provides that two-thirds of any recovery will go to Loghry or the trustee's counsel. Those who filed claims may have already been compensated, but there is no evidence in the record to establish definitively the amount "that would

satisfy all creditors and the costs and fees incurred" or the amount of the prior settlements that has gone to the bankruptcy estate for distribution to Loghry's creditors. If the settlements have made the creditors whole, the court will bar the trustee from further pursuing these claims that Loghry failed to disclose in the bankruptcy case. If, on the other hand, the creditors have not been fully compensated, the court will allow the trustee to go forward with the remaining claims, but he will be estopped from recovering more than "an amount that would satisfy all creditors and the costs and fees incurred."

Because this issue is potentially dispositive, the court will not consider the other arguments at this time, but will allow the parties the opportunity to provide additional briefing and evidence limited to the amounts that would satisfy all creditors, that has been incurred by the bankruptcy trustee, and that has been received by the bankruptcy estate in settlement of the trustee's claims. Each side may file a supplemental brief not to exceed **five pages** and may attach evidence in support. Evidence attached **may not exceed twenty-five pages** unless leave of court is obtained. **The parties may file evidence under seal if it contains confidential settlement information.** These briefs and accompanying evidence must be filed no later than **December 31, 2008**.

## IV. Conclusion

For the foregoing reasons, the court **defers** ruling on Joint Motion for Summary Judgment of Defendants[] Steve Francisco, Starsearch International, LLC, Lexxus International, Inc.[,] and Natural Health Trends Corp. and Defendants' Objections to Plaintiff's Evidence in Support of Response to Motion for Summary Judgment. The court will revisit the motion and objections upon receipt of the parties' supplemental briefs and evidence.

The court also **vacates** the remaining deadlines in its June 5, 2008 scheduling order. The court will issue an amended scheduling order and reset the trial of this action, if necessary, after ruling on the motion for summary judgment.

**It is so ordered** this 12th day of December, 2008.

Sam A. Lindsay
United States District Judge